# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **PURZEL VIDEO GMBH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.    13-cv-00792** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **DOES 1-108,** | ) | **Magistrate Michael T. Mason** |
| | ) | |
| **Defendants.** | ) | |

---

## JOHN DOE 48'S MOTION TO SEVER AND MOTION TO QUASH PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 2

ARGUMENT .................................................................................................. 3

   **A.**   MOVANT HAS STANDING. ........................................................................ 3

   **B.**   MOVANT SHOULD BE SEVERED AND DISMISSED DUE TO MISJOINDER. ........... 5

       **1.**  Standard for Joinder and Severance ................................................. 6

       **2.**  Plaintiff's Claims Do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences." ............................................. 7

       **3.**  Joinder of These Defendants Frustrates Judicial Economy and Fairness .......... 9

   **C.**   PLAINTIFF HAS NOT SATISFIED THE REQUIREMENTS IMPOSED BY THE FIRST AMENDMENT ON LITIGANTS SEEKING TO UNMASK ANONYMOUS SPEAKERS. ............ 12

       **1.**  The First Amendment Protects the Right to Engage in Anonymous Speech. ... 12

       **2.**  Standards for Revealing Anonymous Speakers Online .................................... 14

       **3.**  Because Plaintiff's Proposed Discovery Cannot Survive the Scrutiny Required by the First Amendment, Movant's Motion Must Be Granted. ....... 17

           **a.**   Claim Would Not Survive Motion for Summary Judgment ............... 17

           **b.**   Movant's First Amendment Interests Outweigh Plaintiff's "Need" for Movant's Identity. ...................................................... 18

CONCLUSION ............................................................................................... 20

# **TABLE OF AUTHORITIES**

**Cases**

AF Holdings, LLC v. Does 1-97, No. C 11-3067 CW, 2011 U.S. Dist. LEXIS 126225
(N.D. Cal. Nov. 1, 2011)...................................................................................... 6

Alexander v. Fulton Cnty., Ga., 207 F.3d 1303 (11th Cir. 2000).................................. 6

Barker v. Local 150, Int'l Union of Operating Eng'rs, No. 08 C 50015, 2010 U.S. Dist. LEXIS
22685 (N.D. Ill. Mar. 11, 2010)............................................................................. 4

Buckley v. Am. Constitutional Law Found., 525 U.S. 182 (1999) ........................................ 12, 13

Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332 (D.D.C. 2011)................... 5

Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573 (N.D. Cal.1999)..................................... 15

Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997) .................................................... 6

CP Productions, Inc. v. Does 1-300, No. 10-cv-6255, 2011 U.S. Dist. LEXIS 113013
(N.D. Ill. Feb. 24, 2011) .................................................................................... 10

Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371 (9th Cir. 1980) ................................. 9

Digital Sins, Inc. v. Does 1-245, No. 11 Civ. 8170 (CM), 2012 U.S. Dist. LEXIS 69286
(S.D.N.Y. May 15, 2012)......................................................................... 9, 10, 11, 12

Doe v. 2theMart.com, 140 F.Supp.2d 1088 (W.D. Wash. 2001) ........................................... 13, 15

Doe v. Cahill, 884 A.2d 451 (Del. 2005)........................................................... 14, 15, 16, 17

Grandbouche v. Clancy, 825 F.2d 1463 (10th Cir. 1987)................................................... 14

Hard Drive Prods. v. Does 1-188, 809 F. Supp. 2d 1150 (N.D. Cal. 2011) .................... 7, 8, 9, 11

In re BitTorrent Adult Film Copyright Infringement Cases, No. 11-3995, 2012 U.S. Dist. LEXIS
61447 (E.D.N.Y. May 1, 2012) ........................................................................... 9

In re BitTorrent Copyright Infringement Cases, Case No. 12-1188 (consolidated action), 2013
U.S. Dist. LEXIS 17851 (C.D. Ill. Feb. 11, 2013)..................................................... 6

In re Rule 45 Subpoena Issued to Cablevision Sys. Corp., No. 08-MC-347(ARR)(MDG), 2010
U.S. Dist. LEXIS 71061 (E.D.N.Y. Apr. 23, 2010) .................................................... 4

In re Verizon Internet Servs. Inc., 257 F. Supp. 2d 244 (D.D.C.) ................................... 13

Ingenuity 13 v. Doe, No. 2:12-cv-8333-ODW(JCX), U.S. Dist. LEXIS 64564
(C.D. Cal. May 6, 2013) ........................................................................... 5, 19

Intercon Research Associates, Ltd. v. Dresser Industries, Inc., 696 F.2d 53
(7th Cir. 1982)............................................................................... 6, 9, 12

Interscope Records v. Does, 558 F. Supp. 2d 1176 (D. Kan. 2008) ............................................ 13

IO Group, Inc. v. Does 1-19, No. 10-cv-03851, 2010 U.S. Dist. LEXIS 133717
    (N.D. Cal. Dec. 7, 2010) ......................................................................................................... 11

John Wiley & Sons, Inc. v. Does 1-24, Nos. 12-cv-4231, 12-cv-4232, 12-cv-4730, 2013 U.S.
    Dist. LEXIS 36359 (S.D.N.Y. Mar. 15, 2013) ........................................................................ 10

Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 669 (S.D. Fla. 2011) ............... 9

Malibu Media, LLC v. Does 1-21, No. 12 C 9656, 2013 U.S. Dist. LEXIS 79433
    (N.D. Ill. June 6, 2013) ................................................................................................... 2, 7, 8, 9

Malibu Media, LLC v. Does 1-25, No. 12-cv-0362-LAB (DHB), 2012 U.S. Dist. LEXIS 84948
    (S.D. Cal. June 21, 2012) ........................................................................................................ 4

Malibu Media, LLC v. Does 1-33, No. 12 C 8940, 2012 U.S. Dist. LEXIS 188339
    (N.D. Ill. Dec. 19, 2012) ........................................................................................................ 10

Malibu Media, LLC v. Reynolds, No. 12 C 6672, 2013 U.S. Dist. LEXIS 31228
    (N.D. Ill. Mar. 7, 2013) ................................................................................................ 9, 10, 12

McIntyre v. Ohio Elections Comm'n, 514 U.S. 3347 (1995) ........................................... 5, 12, 13

Mobilisa, Inc. v. Doe, 170 P.3d 712 (Ariz. Ct. App. 2007) ............................................ 16, 17, 18

New York Times v. Sullivan, 376 U.S. 254 (1964) ...................................................................... 13

Pacific Century Int'l, LTD v. Does 1-37, No. 1:12-cv-01057 (consolidated action), 2012 U.S.
    Dist. LEXIS 44368 (N.D. Ill. Mar. 20, 2012) ....................................................................... 11

Pacific Century Int'l, Ltd. v. Does 1-101, No. 11-cv- 02533, 2011 U.S. Dist. LEXIS 124518
    (N.D. Cal. Oct. 27, 2011) ...................................................................................................... 10

Patrick Collins, Inc. v. Does 1-34, No. 12-cv-1475, 2013 U.S. Dist. LEXIS 55413
    (S.D. Cal. Apr. 16, 2013) ....................................................................................................... 10

Patrick Collins, Inc. v. Does 1-38, No. 12-cv-10756-NMG, 2013 U.S. Dist. LEXIS 37856
    (D. Mass. Feb. 19, 2013) ....................................................................................................... 19

Purzel Video GmbH v. Does 1-108, No. 1:13-cv-00792 (N.D. Ill. 2013) ............................... 3, 19

Purzel Video GmbH v. Does 1-36, No. 4:12-cv-02215 (E.D. Mo. 2012) ................................ 3, 19

Purzel Video GmbH v. Does 1-44, No. 4:12-cv-02217 (E.D. Mo. 2012) ................................ 3, 19

Purzel Video GmbH v. Does 1-91, No. 4:12-cv-02292 (E.D. Mo. 2012) ................................ 3, 19

Raw Films, Ltd. v. Does 1-32, No. 1:11-cv-2939-TWT, 2011 U.S. Dist. LEXIS 149215
    (N.D. Ga. Dec. 29, 2011) ........................................................................................................ 9

Reno v. ACLU, 521 U.S. 844 (1997) ........................................................................................... 12

SBO Pictures, Inc. v. Does 1-57, No. 12-cv-22, 2012 U.S. Dist. LEXIS 56578

(D. Md. Apr. 19, 2012) ................................................................................................ 9

Shelley v. Kraemer, 334 U.S. 1 (1948) ............................................................................... 13

Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir. 1977) ....................................... 14

Sony Music Entm't, Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................. 5, 13, 14

Sunlust Pictures, LLC v. Does 1-75, No. 12 C 01546, 2012 U.S. Dist. LEXIS 121368
    (N.D. Ill. Aug. 27, 2012) .............................................................................................. 4

Talley v. California, 362 U.S. 60 (1960) ............................................................................. 12

Third Degree Films, Inc. v. Does 1-131, 280 F.R.D. 493 (D. Ariz. 2012) ......................... 9

UMG Recordings, Inc. v. Does 1-4, No. 06-cv-0652, 2006 U.S. Dist. LEXIS 32821
    (N.D. Cal. Mar. 6, 2006) ............................................................................................. 13

Voltage Pictures, LLC v. Does 1-31, No. CV413-037, 2013 U.S. Dist. LEXIS 47520
    (S.D. Ga. April 1, 2013) .............................................................................................. 19

Zambezia Film (Pty) Ltd. v. Does 1-30, Nos. 13 C 1323, 13 C 1741, 2013 U.S. Dist. LEXIS
    39218 (N.D. Ill. March 20, 2013) ............................................................................ 7, 10

**Other Authorities**

Purzel Video – Amateur Erotik, Videos auf DVD, www.purzel-video.de (last visited June 12,
    2013) ............................................................................................................................. 2

Sean B. Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John
    Doe Copyright Infringement Lawsuits*, 111 MICH. L. REV. 283 (Nov. 2012) ........... 7

**Rules**

Fed. R. Civ. P. 20(a)(2) ............................................................................................... 5, 6, 9

Fed. R. Civ. P. 20(a)(2)(A) ................................................................................................... 5

Fed. R. Civ. P. 20(b) ........................................................................................................ 6, 9

Fed. R. Civ. P. 21 ............................................................................................................. 6, 9

Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv) .................................................................................... 4

**Treatises**

Moores Federal Practice § 45.50[3] (Matthew Bender 3d ed.) ............................................ 4

## INTRODUCTION

John Doe 48 ("Movant"), by and through his[1] counsel, Mudd Law Offices, hereby moves this Court to sever Movant and quash the subpoena issued by Plaintiff Purzel Video GmbH ("Subpoena") to Movant's Internet Service Provider, Comcast Corporation ("ISP" or "Comcast").[2] On March 18, 2013, Movant received notification from Comcast that it received the Subpoena from the Plaintiff seeking Movant's personal identifying information, particularly the Movant's name, current (and permanent) address, telephone numbers, electronic mail addresses, and Media Access Control ("MAC") addresses (collectively "Identifying Information"). The Plaintiff seeks the Identifying Information for the purposes of this litigation, in which it alleges that the Movant and over one hundred other defendants engaged in infringement of the Plaintiff's copyrights by reproducing and distributing an adult entertainment film titled *Chubby Teens 1* ("Film"). Plaintiff purportedly intends to use the Identifying Information to serve the Movant and other defendants with the Summons and Complaint. More likely, the Plaintiff intends to use the Identifying Information to pressure Movant and other defendants to settle rather than have the information publicly disclosed. Movant files this Motion to Sever and Motion to Quash ("Motion"), pursuant to Fed. R. Civ. P. 45(c), to prevent his Identifying Information from being disclosed because (a) Movant has been improperly joined and (b) Plaintiff's Subpoena fails to meet the First Amendment standard required of litigants attempting to reveal identifying information of anonymous parties through the discovery

---

[1] The use of the pronoun "he" or the pronominal adjective "him" has been for convenience and should not be construed necessarily to reflect on the gender of John Doe 48.

[2] Though John Doe 48 refers to himself as "Movant" throughout this Memorandum, the Movant is clearly a defendant to the litigation. Indeed, as the Plaintiff admits, it has filed suit against *individual* defendants (not IP addresses) because "it is impossible for Plaintiff to identify Defendants by name . . . . Each Defendant is known to Plaintiff by the Internet Protocol ("IP") address." Compl. ¶¶ 27-28. As such, a reference to "Movant" does not diminish the absolute fact that the Movant is a defendant in this litigation.

process.[3]  For these reasons as more fully articulated below, the Movant requests this Court grant

his Motion, sever him from this lawsuit, and/or quash the Subpoena such that his identity is not

unjustifiably disclosed.

## BACKGROUND

Plaintiff Purzel Video GmbH ("Plaintiff"), a California company operating in Vielsdorf,

Germany, produces and distributes adult films.  Compl. ¶ 22.; see also Purzel Video – Amateur

Erotik, Videos auf DVD, www.purzel-video.de (last visited June 12, 2013).  In October 2012,

the Plaintiff began filing copyright infringement lawsuits against large numbers of unknown

defendants, alleging that they engaged in copyright infringement over BitTorrent, a peer-to-peer

("P2P") file transfer technology protocol that allows the distribution of large amounts of data

over the Internet.[4]  Rather than file one lawsuit against each unknown defendant (commonly

referred to as a "Doe Defendant"), the Plaintiff included multiple Doe Defendants in each

lawsuit.  In these "mass copyright infringement cases," the Plaintiff identifies each Doe

Defendant only by an Internet Protocol ("IP") address.[5]  Since October 2012, the Plaintiff has

---

[3] The notice received from Comcast provided the Movant until April 17, 2013 in which to file a
motion to quash or vacate the Subpoena.  Counsel for the Plaintiff agreed to Movant's requests
for additional time in which to file this Motion.

[4] BitTorrent provides a method for large file distribution without placing a heavy burden on the
network and source computer.  Instead of one computer transferring a file to the downloader,
BitTorrent enables users to join a "swarm" of host computers to download pieces of a file
simultaneously from each other.  To completely transfer a large file, one individual, the "seeder,"
uploads the entire file to a torrent website.  Pieces of the file are distributed to several "peers"
attempting to download the file.  The peers all receive a piece of the file, and the peers
simultaneously transfer and download all of the pieces of the file, making up a "swarm."  A
"swarm" is made up of both the seeders and the other peers downloading and transferring the
file.  The identities of the peers and the seeders are unknown because an IP address is the only
identifying information needed by the system to download and distribute a file.  BitTorrent
facilitates rapid, easy downloading of data.  See Malibu Media, LLC v. Does 1-21, 12 C 9656,
2013 U.S. Dist. LEXIS 79433, at *16 (N.D. Ill. June 6, 2013); see also Compl. ¶¶ 6, 13.

[5] An Internet Protocol address is a unique identifying number provided to a computer connecting
to the Internet by an internet service provider in the form 000.000.000.000, where each "000"
would be a number with a value between 0 and 255.

sued hundreds of Doe Defendants. Of these hundreds, the Plaintiff has apparently obtained the identities of 279 Doe Defendants through expedited discovery of the nature at issue here. Dkt. Report, <u>Purzel Video GmbH v. Does 1-108</u>, No. 1:13-cv-00792 (N.D. Ill. 2013); Dkt. Report, <u>Purzel Video GmbH v. Does 1-91</u>, No. 4:12-cv-02292 (E.D. Mo. 2012); Dkt. Report, <u>Purzel Video GmbH v. Does 1-44</u>, No. 4:12-cv-02217 (E.D. Mo. 2012); <u>Purzel Video GmbH v. Does 1-36</u>, No. 4:12-cv-02215 (E.D. Mo. 2012). However, it also appears the Plaintiff has never served any of these identified Doe Defendants with proper process in the more than six months since the first lawsuit. <u>Id.</u> Given this, it is very unlikely that anyone will be actually served in the instant lawsuit or any of Plaintiff's other lawsuits. Rather, the Plaintiff uses its lawsuits as leverage to force settlements from the Doe Defendants who either cannot afford the costs of litigation or fear an association with the litigation due to the embarrassing nature of the pornographic Film. With nearly 300 Doe Defendants remaining to be identified, including the Movant, this abuse of the courts and litigation process must cease unless and until the Plaintiff properly files its lawsuits and meets the applicable standard.

## ARGUMENT

Plaintiff's Complaint improperly joins Movant with 107 other unrelated Defendants. Additionally, the Plaintiff has not met the requirements imposed by the First Amendment on litigants seeking to reveal identifying information of an anonymous defendant. As such, the Court should sever Movant from the Complaint, and dismiss Movant from the instant litigation. Alternatively, the Court must quash the Subpoena as to Movant.

### A.  MOVANT HAS STANDING.

Movant has standing to challenge the Plaintiff's Subpoena issued to Comcast. A party to an action has "standing to challenge a subpoena directed to a nonparty . . . [when] that party

3

claims a 'personal right or privilege regarding the production' commanded by the subpoena."

Barker v. Local 150, Int'l Union of Operating Eng'rs, No. 08 C 50015, 2010 U.S. Dist. LEXIS

22685, at *8 (N.D. Ill. Mar. 11, 2010) (Mahoney, J.) (quoting 9 Moores Federal Practice §

45.50[3] (Matthew Bender 3d ed.)).  Protection of a privacy interest allows for standing to quash

a subpoena, even if that privacy interest is "minimal at best."  Sunlust Pictures, LLC v. Does 1-

75, No. 12 C 01546, 2012 U.S. Dist. LEXIS 121368, at *5-6 (N.D. Ill. Aug. 27, 2012) (Tharp, J.)

("Because Doe has at least a minimal privacy interest in the information requested by subpoena,

he has standing to object."); see also Malibu Media, LLC v. Does 1-25, No. 12-cv-0362-LAB

(DHB), 2012 U.S. Dist. LEXIS 84948, at *2 (S.D. Cal. June 21, 2012).  Furthermore, a subpoena

must be quashed when it "requires disclosure of privileged or other protected matter, if no

exception or waiver applies, or [if it] subjects a person to undue burden." Fed. R. Civ. P.

45(c)(3)(A)(iii)-(iv).  As to Movant, his identity represents the heart of the instant litigation.  The

Plaintiff has filed this lawsuit to obtain the identity of the Movant and other Defendants in

relation to adult films alleged to have been watched in the privacy of their homes.  The Plaintiff

intends to use the Movant's identity to secure a settlement with threats of public embarrassment.

Thus, for Movant, his identity stands between his privacy and the extortive efforts of the

Plaintiff.  Given this, Movant has a substantial privacy interest in the information sought by the

Subpoena.  Consequently, he has established standing to bring this Motion.

Movant also has standing to challenge the Subpoena in the interest of protecting his First

Amendment right to anonymous speech.  See In re Rule 45 Subpoena Issued to Cablevision Sys.

Corp., No. 08-MC-347(ARR)(MDG), 2010 U.S. Dist. LEXIS 71061, at *8-9 (E.D.N.Y. Apr. 23,

2010).  The Plaintiff seeks Movant's Identifying Information stemming from alleged use of peer-

to-peer ("P2P") networks.  See Compl. ¶4.  Although courts hold that the First Amendment does

not protect copyright infringement, a "file sharer's speech is still entitled to 'some level of First Amendment protection,'"[6] Sony Music Entm't, Inc. v. Does 1-40, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004), and individuals "do engage in expressive activity when they interact with other users on BitTorrent." Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 349 (D.D.C. 2011). Because Movant has a First Amendment constitutional right to engage in anonymous speech, McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995), the Movant has standing to challenge the Subpoena in an effort to protect such right. See id.; Sony Music Entm't, Inc., 326 F. Supp. 2d at 564.

**B.     MOVANT SHOULD BE SEVERED AND DISMISSED DUE TO MISJOINDER.**

Plaintiff's Complaint improperly joins over 100 unrelated Defendants because the Plaintiff's claims do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Such misjoinder jeopardizes the Doe Defendants' right to an *individual* evaluation of their actions and defenses. Because the Plaintiff has not satisfied the permissive joinder requirements set out in Fed. R. Civ. P. 20(a)(2), Movant should

---

[6] Although other courts have held that First Amendment anonymity concerns are limited in the context of copyright infringement claims, these limitations arise in the context of what appears to be meritorious copyright infringement claims. Sony Music Entm't, Inc., 326 F. Supp. 2d at 567 (First Amendment right of alleged file-sharers to remain anonymous "must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims."). We contend here, given the circumstances, the Plaintiff's "lawsuit" does not outweigh the Movant's interests. Indeed, as one court has recently stated:

> Plaintiffs [like the Plaintiff in this matter] have outmaneuvered the legal system. They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video. Then they offer to settle–for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn. So now, copyright laws originally designed to compensate starving artist allow, starving attorneys in this electronic-media era to plunder the citizenry . . . . Plaintiffs do have a right to assert their intellectual-property rights, so long as they do it right.

Ingenuity 13 v. Doe, No. 2:12-cv-8333-ODW(JCX), 2013 U.S. Dist. LEXIS 64564, at *1-3 (C.D. Cal. May 6, 2013).

be severed and dismissed from the instant litigation.

### 1.    <u>Standard for Joinder and Severance</u>

Pursuant to Fed. R. Civ. P. 20(a)(2), persons may be joined as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Certainly, joinder of defendants promotes "trial convenience and expedite[s] the resolution of lawsuits, thereby eliminating unnecessary lawsuits." <u>Alexander v. Fulton Cnty., Ga.</u>, 207 F.3d 1303, 1323 (11th Cir. 2000), <u>overruled on other grounds by Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003). However, "[t]he breadth of permissive joinder is not unlimited . . . [and] alleging the same type of harm is not enough to justify joinder, because each act of infringement is a separate occurrence. There must be more." <u>In re BitTorrent Copyright Infringement Cases</u>, No. 12-1188 (consolidated action), 2013 U.S. Dist. LEXIS 17851, at *4-5 (C.D. Ill. Feb. 11, 2013). To this end, "a trial court must also examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." <u>Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.</u>, 696 F.2d 53, 57 (7th Cir. 1982). For, a court may separate defendants to protect any party from "embarrassment, delay, expense, or other prejudice." Fed. R. Civ. P. 20(b). Indeed, pursuant to Fed. R. Civ. P. 21, a court may add or drop a party or sever any claim against a party so long as "no substantial right will be prejudiced by severance." <u>AF Holdings, LLC v. Does 1-97</u>, No. C 11-3067 CW, 2011 U.S. Dist. LEXIS 126225, at *5 (N.D. Cal. Nov. 1, 2011) (quoting <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997)); Fed. R. Civ. P. 21.

2.    **Plaintiff's Claims Do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences"**

Based on this Court's own analysis in other cases, joinder is not appropriate here. This Court has held that alleged copyright infringement through the use of a BitTorrent swarm is insufficient to satisfy permissive joinder under Fed. R. Civ. P. 20. See e.g., Malibu Media, LLC v. Does 1-21, 12 C 9656, 2013 U.S. Dist. LEXIS 79433, at *14-17 (N.D. Ill. June 6, 2013) (Reinhard, J.); Zambezia Film (Pty) Ltd. v. Does 1-30, Nos. 13 C 1323, 13 C 1741, 2013 U.S. Dist. LEXIS 39218 (N.D. Ill. March 20, 2013) (Shadur, J.). Specifically, in determining when defendants in a swarm can be properly joined, this Court stated:

> [J]udges should require plaintiffs to plead facts sufficient to show that the defendants were not only part of the *same swarm*, but that they were part of the *same swarm at the same time as one another*. If plaintiffs fail to satisfy this standard, expedited discovery should be denied and the improperly joined defendants should be severed from the action. Generally, this means that a plaintiff would be unable to join every member of a swarm that exists for a protracted period of time. Rather, the plaintiff would have to show that all the defendants downloaded the copyrighted work over a short enough period of time to support a probable inference that all the defendants were present in the swarm at the same time. Such a time period would usually span hours rather than days or months.

Zambezia Film, 2013 U.S. Dist. LEXIS 39218, at *4 (emphasis added) (quoting Sean B. Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 MICH. L. REV. 283, 292-93 (Nov. 2012)). Put simply, a wide span of time cannot "support a probable inference that all the defendants were present in the swarm at the same time," Zambezia Film, 2013 U.S. Dist. LEXIS 39218, at *4, because Doe defendants might be in and out of a swarm as they download pieces of the file. "Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm." Hard Drive Prods. v. Does 1-188, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011).

Here, the Plaintiff does not allege any facts that support that the Defendants acted in concert with one another or that any of the Defendants' or Movant's actions were dependent on the actions of any other Defendant.  <u>See</u> <u>generally</u> Compl.  Rather, the Plaintiff alleges that the downloads in this particular swarm span over five months, from August 8, 2012 until January 13, 2013.  Compl., Ex. A, Dkt. No. 1-1.  This time span is insufficient to sustain permissive joinder. <u>Malibu Media</u>, 2013 U.S. Dist. LEXIS 79433, at *17 ("[P]laintiff's allegations that Does' participation in a swarm at some point over the course of over six weeks are not sufficient to establish that they acted in concert.").

Additionally, the Plaintiff only makes conclusory allegations that the Defendants' alleged actions constitute part of the same series of transactions.  Compl. ¶¶ 2-3.  Not surprisingly, nowhere in the Plaintiff's Complaint does it sufficiently allege that any of the Defendants shared any files or components thereof *directly* with each other.  <u>See</u> <u>id.</u> ¶¶ 4-21.  For, "it is improbable that defendants entering a swarm weeks or months apart will actually exchange pieces of data." <u>Malibu Media</u>, 2013 U.S. Dist. LEXIS 79433, at *17.  Given that Plaintiff's own evidence demonstrates that there were large time spans between each of the different defendant's alleged sharing of the Film, Compl. Ex. A, Dkt. No. 1-1, the Defendants clearly could not be not acting in concert and likely did not download or upload the Film from any other individual defendant. <u>See</u> <u>Hard Drive Productions</u>, 809 F. Supp. 2d at 1163 ("In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole.")  Consequently, Plaintiff's allegations that the Movant and other defendants engaged in the same swarm over a period of over five months do not suffice to adequately plead joinder of

all the Defendants in this matter to satisfy Fed. R. Civ. P. 20(a)(2).[7]  See Malibu Media, 2013

U.S. Dist. LEXIS 79433, at *17; Hard Drive Productions, 809 F. Supp. 2d at 1163.  Thus, the

Movant is improperly joined in this case.  See id.  Therefore, Movant's Motion must be granted

and this Court should sever and dismiss him from this case.  See id.

### 3.    Joinder of These Defendants Frustrates Judicial Economy and Fairness.

Even if the Plaintiff had met the parameters for permissive joinder under Fed. R. Civ. P.

20(a)(2), this Court should refuse joinder.  For, it possesses broad discretion to refuse joinder in

the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding

principles of fundamental fairness.  Fed. R. Civ. P. 20(b), 21; see, e.g., Intercon, 696 F.2d at 57-

58 (7th Cir. 1982) (citing Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th

Cir. 1980)).  Such an interest exists here.  Indeed, joinder in BitTorrent cases thwarts judicial

economy and fairness because each defendant will have his or her own individual nuanced legal

and factual defenses.  Malibu Media, LLC v. Reynolds, No. 12 C 6672, 2013 U.S. Dist. LEXIS

31228, at *49-52 (N.D. Ill. Mar. 7, 2013) (Kendall, J.); In re BitTorrent Adult Film Copyright

Infringement Cases, No. 11-3995, 2012 U.S. Dist. LEXIS 61447, at *35 (E.D.N.Y. May 1,

2012).  Given this, joinder places an undue burden on Defendants, such as Movant, during

discovery and trial where the defenses of all Defendants will need to be addressed, many of

---

[7] Many BitTorrent cases have come to the same conclusion.  See, e.g., Digital Sins, Inc. v. Does
1-245, No. 11 Civ. 8170 (CM), 2012 U.S. Dist. LEXIS 69286, at *6 (S.D.N.Y. May 15, 2012)
(there was "no concerted action whatever, and no series of related occurrences" given the alleged
swarm lasted 59 days); In re BitTorrent Adult Film Copyright Infringement Cases, No. 11-3995,
2012 U.S. Dist. LEXIS 61447, at *33 (E.D.N.Y. May 1, 2012) ("the dates of downloading
provided in the complaints—which are often weeks or months apart—further undermine the
allegation that all of the John Does were part of a single swarm"); SBO Pictures, Inc. v. Does 1-
57, No. 12-cv-22, 2012 U.S. Dist. LEXIS 56578, at *5-6 (D. Md. Apr. 19, 2012) (severing
defendants because the alleged swarm occurred over a three-month period); Third Degree Films,
Inc. v. Does 1-131, 280 F.R.D. 493, 496-97 (D. Ariz. 2012) (finding misjoinder because some
defendants may never overlap one another in a swarm that lasted months); see also Raw Films,
Ltd. v. Does 1-32, No. 1:11-cv-2939-TWT, 2011 U.S. Dist. LEXIS 149215, at *7 (N.D. Ga. Dec.
29, 2011); Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 669, 671-72 (S.D.
Fla. 2011).

which may be irrelevant to a particular defendant's individual nuanced defense.  See Malibu

Media, 2013 U.S. Dist. LEXIS 31228, at *49-52; (citing Pacific Century Int'l, Ltd. v. Does 1-

101, No. 11-cv- 02533, 2011 U.S. Dist. LEXIS 124518 (N.D. Cal. Oct. 27, 2011) ("[C]ase

management and trial . . . would be inefficient, chaotic, and expensive" and "each Defendant

would have the right to be present at every other Defendant's depositions—a thoroughly

unmanageable and expensive ordeal.")).

    For these and similar reasons, this Court has found joinder of defendants in BitTorrent

cases to be improper.  Zambezia Film (Pty) Ltd. v. Does 1-30, Nos. 13 C 1323, 13 C 1741, 2013

U.S. Dist. LEXIS 39218, at *4-5 (N.D. Ill Mar. 20, 2013) (Shadur, J.) (consolidation of two

BitTorrent cases where the court severed defendants for misjoinder because the complaint failed

to allege that defendants were in the same swarm at the same time); Malibu Media, LLC v.

Reynolds, No. 12 C 6672, 2013 U.S. Dist. LEXIS 31228, at *43 (N.D. Ill. Mar. 7, 2013)

(Kendall, J.); Malibu Media, LLC v. Does 1-33, No. 12 C 8940, 2012 U.S. Dist. LEXIS 188339,

at *4 (N.D. Ill. Dec. 19, 2012) (Conlon, J.) (severing defendants because "allegations may be

sufficient to show the John Does committed the same *type* of violation (copyright infringement

of the works) in the same way (using BitTorrent protocol), but they fail to show they acted in

concert"); see also CP Productions, Inc. v. Does 1-300, No. 10-cv-6255, 2011 U.S. Dist. LEXIS

113013 at *1 n.2 (N.D. Ill. Feb. 24, 2011) (Shadur, J.) ("It would constitute a real stretch of the

normal meaning of language for to call Rule 20(a)(2)(A) into play as the asserted predicate for

lumping [plaintiff's] separate asserted claims into a single lawsuit.").[8]

---

[8] Significant numbers of courts outside Illinois have raised similar joinder concerns.  See, e.g., Patrick Collins, Inc. v. Does 1-34, No. 12-cv-1475, 2013 U.S. Dist. LEXIS 55413, at *12 (S.D. Cal. Apr. 16, 2013); John Wiley & Sons, Inc. v. Does 1-24, Nos. 12-cv-4231, 12-cv-4232, 12-cv-4730, 2013 U.S. Dist. LEXIS 36359, at *11-12 (S.D.N.Y. Mar. 15, 2013) (severing defendants in *three* BitTorrent cases); Digital Sins, Inc. v. Does 1-245, No. 11 Civ. 8170 (CM), 2012 U.S. Dist. LEXIS 69286, at *1-2 (S.D.N.Y. May 15, 2012) (collecting cases in other jurisdictions where

Moreover, although joining hundreds of unrelated defendants in one lawsuit will make

litigation less expensive for the Plaintiff by enabling it to avoid, at a minimum, the separate filing

fees required for individual cases and travel costs, this "convenience" should not displace well-

established joinder principles. In fact, this Court has recognized that tactics similar to the

Plaintiff's rob the courts of fees needed to adjudicate these cases:

> In addition to the procedural improprieties outlined above, the plaintiff's tactics
> deny the federal courts additional revenue from filing fees in the suits that should
> be filed to obtain the information the plaintiffs desire. CP Prods., 2001 WL
> 737761, at *1 ("No predicate has been shown for thus combining 300 separate
> actions on the cheap – if CP had sued the 300 claimed infringers separate for their
> discrete infringements, the filing fees along would have aggregated $105,000
> rather than $350.")

Pacific Century Int'l, LTD v. Does 1-37, No. 1:12-cv-01057 (consolidated action), 2012 U.S.

Dist. LEXIS 44368, at *18-19 n.15 (N.D. Ill. Mar. 20, 2012) (Holderman, J.). Additionally,

requiring a plaintiff to bring separate actions balances the interests of a plaintiff to protect its

copyrights with the courts' interest in promoting a fair and efficient judicial process. As

succinctly stated in the Southern District of New York:

> The only economy that litigating these cases as a single action would achieve is
> an economy to plaintiff – the economy of not having to pay a separate filing fee
> for each action brought. However, the desire to avoid paying statutorily mandated
> filing fees affords no basis for joinder. In these BitTorrent cases, where numerous
> courts have already chronicled abusive litigation practices . . . forcing plaintiff to
> bring separate actions against separate infringers, and to pay a filing fee for each
> action, is the single best way to forestall further abuse.

Digital Sins Inc. v. Does 1-245, 11 Civ. 8170 (CM), 2012 U.S. Dist. LEXIS 69286, at *6

(S.D.N.Y. May 15, 2012).

For the foregoing reasons, the joinder of the Movant with 107 other, unrelated

Defendants is improper. See supra. Therefore, this Court should exercise its discretion to sever

---

misjoinder was found); Hard Drive Prods., Inc. v. Does 1-188, 809 F.Supp.2d 1150, 1156-59
(N.D. Cal. 2011); IO Group, Inc. v. Does 1-19, No. 10-cv-03851, 2010 U.S. Dist. LEXIS
133717, at *4 (N.D. Cal. Dec. 7, 2010).

and dismiss the Movant from this case.  See Intercon, 696 F.2d at 57-58; Malibu Media, 2013

U.S. Dist. LEXIS 31228, at *49-52; Digital Sins, 2012 U.S. Dist. LEXIS 69286, at *6.

## C.  PLAINTIFF HAS NOT SATISFIED THE REQUIREMENTS IMPOSED BY THE FIRST AMENDMENT ON LITIGANTS SEEKING TO UNMASK ANONYMOUS SPEAKERS.

Courts often allow discovery at the outset of a lawsuit to enable a plaintiff to identify

otherwise unknown persons alleged to have committed a legal wrong.  However, in its Motion

for Leave to Take Discovery Prior to Rule 26(f) Conference, the Plaintiff failed to properly

apprise the Court of the appropriate discovery standard in cases where, as here, Movant allegedly

engaged in anonymous communications and Plaintiff's claims arise from those alleged activities.

See generally Mot. for Leave to Take Disc.  Especially given the number of Doe Defendants

affected and the pornographic nature of the film in question, it is crucial that the Court apply the

correct procedure *here* and require Plaintiff to meet the appropriate standard before the Movant's

identity is disclosed.  Because Plaintiff has not followed the appropriate procedures, the

Subpoena must be quashed.

### 1.  The First Amendment Protects the Right to Engage in Anonymous Speech.

The United States Supreme Court has consistently upheld the right to anonymous speech

in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . .

[that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from

retaliation . . .  at the hand of an intolerant society."  McIntyre, 514 U.S. at 357 (1995); see also

Buckley v. Am. Constitutional Law Found., 525 U.S. 182, 199 (1999); Talley v. California, 362

U.S. 60, 64 (1960).  This fundamental right enjoys the same protections whether the context for

speech and association is an anonymous political leaflet, an Internet message board or a video-

sharing site.  Reno v. ACLU, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level

of First Amendment scrutiny that should be applied to" the Internet).  See also, e.g., Doe v.

2theMart.com, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) (stating that the Internet

promotes the "free exchange of ideas" because people can easily engage in such exchanges

anonymously).

First Amendment protection extends to the anonymous publication of expressive works

on the Internet, even if the publication is alleged to infringe copyrights.  See Sony Music Entm't,

326 F. Supp. 2d at 564 ("The use of P2P file copying networks to download, distribute or make

sound recordings available qualifies as speech entitled to First Amendment protection."); see

also, e.g., In re Verizon Internet Servs. Inc., 257 F. Supp. 2d 244, 260 (D.D.C.), rev'd on other

grounds, 351 F.3d 1229 (D.C. Cir. 2003); Interscope Records v. Does, 558 F. Supp. 2d 1176,

1178 (D. Kan. 2008); UMG Recordings, Inc. v. Does 1-4, No. 06-cv-0652, 2006 U.S. Dist.

LEXIS 32821, at *5 (N.D. Cal. Mar. 6, 2006).  In Sony, the court concluded that a file sharer is

"making a statement" by downloading a work without charge or license.  Sony Music Entm't,

326 F. Supp. 2d at 564.  In addition, a file sharer is expressing himself through the selection of

content and by making it available to others.  Id.  This is particularly poignant where, as here, the

content at issue would be embarrassing if publicly disclosed given its adult nature.  Although

sharing creative content is not "political expression" entitled to the "broadest protection," a file

sharer is still entitled to "some level of First Amendment protection."  Id. (quoting McIntyre v.

Ohio Elections Comm'n, 514 U.S. 334 at 346).

Because the First Amendment protects anonymous speech and association, efforts to use

the power of the courts to pierce anonymity are subject to a qualified privilege.[9]  Courts must "be

vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas."  Buckley, 525

U.S. at 192.  Just as in other cases in which litigants seek information that may be privileged,

---

[9] A court order, even if granted to a private party, is a state action and hence subject to
constitutional limitations.  See, e.g., New York Times v. Sullivan, 376 U.S. 254, 265 (1964);
Shelley v. Kraemer, 334 U.S. 1, 14 (1948).

courts must consider the privilege before authorizing discovery.  See, e.g., Sony Music Entm't, 326 F. Supp. at 563 ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."); Grandbouche v. Clancy, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing Silkwood v. Kerr-McGee Corp., 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there exists good reason to believe that the lawsuit has a realistic chance of being successful.  Moreover, the identification of an anonymous speaker is a form of relief to the plaintiff that harms the anonymous defendant permanently by denying him his right to anonymous expression.  For this reason, such relief should not be granted without some proof of wrongdoing.  The foregoing being said, the constitutional privilege to remain anonymous is not absolute.  Plaintiffs may properly seek information necessary to pursue meritorious litigation. See, e.g., Doe v. Cahill, 884 A.2d 451, 456 (Del. 2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no Constitutional protection.").  For this reason, courts have made effects to develop a standard that protects the interests of all parties.

**2.      Standards for Revealing Anonymous Speakers Online**

In developing a standard for determining when an anonymous individual's identity may be disclosed, courts have recognized an inherent problem arises in such cases because, at the outset of litigation, plaintiffs typically rely upon mere allegations of wrongdoing.  However, a privilege is generally not overcome by mere allegations.  Indeed, a serious chilling effect on

anonymous speech would result if Internet speakers knew they could be identified by persons

who merely allege wrongdoing, without necessarily having any intention of carrying through

with actual litigation.  See, e.g., Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578 (N.D.

Cal.1999) ("People who have committed no wrong should be able to participate online without

fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and

thereby gain the power of the court's order to discover their identity."); see also Doe v.

2theMart.com, 140 F.Supp.2d 1088, 1093 (W.D. Wash. 2001) ("If Internet users could be

stripped of . . . anonymity by a civil subpoena enforced under the liberal rules of civil discovery,

this would have a significant chilling effect on Internet communications and thus on basic First

Amendment Rights.  Therefore, discovery requests seeking to identify anonymous Internet users

must be subject to careful scrutiny by the courts.").  Consequently, courts have employed

standards and imposed strict requirements upon plaintiffs that must be met prior to authorizing

the discovery of information identifying anonymous speakers.  See, e.g., Doe v. Cahill, 884 A.2d

451 (Del. 2005); 2theMart.com, 140 F.Supp.2d 1088 (W.D. Wash. 2001); Dendrite, 775 A.2d at

771; Seescandy.com, 185 F.R.D. at 578.

One of the first standards to address the issue of unmasking anonymous online speakers

was Dendrite Int'l., Inc. v. Doe, 342 N.J. Super. 134, 775 A.2d 756, 760 (N.J. App. 2001). Under

Dendrite, a petition must:

1) make reasonable efforts to notify the accused Internet user of the pendency of
   the identification proceeding and explain how to present a defense;

2) set forth the exact actions of each Doe defendant that constitute actionable
   cause;

3) allege all elements of the cause of action and introduce prima facie evidence
   for each Doe defendant sufficient to survive a motion for summary judgment;
   and

4) "[a]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

Dendrite, 775 A.2d at 760-61; see also Cahill, 884 A.2d at 460 (Del. 2005). The Dendrite court was dismissive in applying a motion to dismiss standard, because such a "standard in isolation fails to provide a basis for an analysis and balancing of [petitioner's] request for disclosure in light of [anonymous speaker's] competing right of anonymity in the exercise of his right of free speech." Id. at 770. As such, Dendrite held the summary judgment standard better serves the parties at issue. See id. 769-70.

Another prevalent standard that developed after Dendrite was enunciated in Cahill. The Cahill court adopted prongs one and three of the Dendrite test when determining whether a party's petition could compel the unmasking anonymous speaker. Id. at 461. The court understood the second prong of Dendrite was superfluous because "[t]he second requirement, that the plaintiff set forth the exact defamatory statements, is subsumed in the summary judgment inquiry." Id. Indeed, the alleged statements would necessarily be needed to survive a summary judgment standard. Id. Similarly, the Cahill court thought Dendrite's fourth "balancing" prong was unneeded, because the "summary judgment test is itself the balance." Id. Like the Dendrite test, the Cahill test's main element is the summary judgment standard. Id.

The Dendrite and Cahill standards were then synthesized by the Court of Appeals of Arizona in Mobilisa, Inc. v. Doe, 170 P.3d 712 (Ariz. Ct. App. 2007). Mobilisa maintains the summary judgment standard, but also requires the party seeking information about an anonymous speaker to demonstrate that the "balance of the parties' competing interests favors

16

disclosure."[10]  Mobilisa, 170 P.3d at 721.  Thus, under the Mobilisa standard, a party seeking disclosure of information about an anonymous (or pseudonymous) individual must (a) provide notice to the anonymous individual and an opportunity to respond; (b) demonstrate that it would survive summary judgment; and (c) demonstrate that a balance of all interests would weigh in favor of disclosure.  Id.  Consequently, the Mobilisa standard most effectively balances the rights of all parties involved.  As such, this Court should apply the Mobilisa standard in this action to determine the propriety of compelling Comcast to disclose identifying information about the Movant.

3.    **Because Plaintiff's Proposed Discovery Cannot Survive the Scrutiny Required by the First Amendment, Movant's Motion Must Be Granted.**

Plaintiff fails to meet the Mobilisa standard.[11]  Plaintiff has failed to allege a *prima facie* case against Movant and demonstrate it would survive summary judgment.  Additionally, the Movant would be irreparably harmed by the disclosure of his Identifying Information.  Consequently, a balance of interests weighs against disclosure.  Therefore, this Court should grant his Motion and quash the Subpoena.

a.    **Claim Would Not Survive Motion for Summary Judgment**

Plaintiff has not provided sufficient evidence that any Doe Defendant, let alone the Movant, infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work.  Plaintiff contends that each Defendant acted "in concert with its John Doe swarm members, [by] simultaneously allowing others to steal (download from the swarm) Plaintiff's copyrighted materials."  Compl. ¶ 17.  However, in support of this contention, Plaintiff proffers only the

---

[10] In essence, the Mobilisa court reinstated an element of the Dendrite standard that Cahill had omitted.

[11] As an analysis of Mobilisa also reflects an analysis under Dendrite, the Plaintiff fails to also meet the Dendrite standard.

following factual allegations: (1) that by means of an undisclosed "proprietary techniques," Plaintiff's agent "locat[ed] swarms where peers are distributing Plaintiff's copyrighted creative works" and (2) then used the undisclosed proprietary technology to generate an attached list of IP addresses that allegedly correspond to copyright infringing Defendants, as well as the date and time of the alleged infringing activity. Decl. of Matthias Schroeder ("Padewet Decl.") at ¶¶ 8, 25, 26 (Dkt. No. 8-2). The Plaintiff does not meet its burden under Mobilisa or Dendrite with this showing. See Mobilisa, 170 P.3d at 721; Dendrite, 775 A.2d at 769-70. Instead of the conclusory, generalized showing made to date, Plaintiff must instead present *specific* evidence resulting from the investigation, for *each* Doe Defendant, including the Movant. See Mobilisa, 170 P.3d at 721; Dendrite, 775 A.2d at 760. Such evidence is already available to the Plaintiff prior to discovery and must be provided as part of its showing to secure expedited discovery in this instance. See Mobilisa, 170 P.3d at 721; Dendrite, 775 A.2d at 769-70. Because the Plaintiff did not present any such evidence in its early discovery motion, the Subpoena must be quashed. See Mobilisa, 170 P.3d at 721; Dendrite, 775 A.2d at 769-70, 772.

### b. Movant's First Amendment Interests Outweigh Plaintiff's "Need" for Movant's Identity.

Even if Plaintiff could marginally satisfy the summary judgment standard under Mobilisa and Dendrite, the Court must still balance all interests to determine whether disclosure is warranted. Mobilisa, 170 P.3d at 721; see also Dendrite, 775 A.2d at 760-61. Given the Plaintiff's improper joinder of over 100 Defendants, as well as the lack of transparency about the means by which the Plaintiff generated its list of "infringers," the Court should exercise great caution and prevent Plaintiff from bypassing procedural protections and taking shortcuts to achieve its end. Here, the adult nature of the material that Plaintiff alleges has been downloaded creates a very serious risk of reputational harm to the Movant. On the other hand, the Plaintiff

18

has not demonstrated any real, meritorious basis for disclosure of Movant's identity.

Although Plaintiff has not elaborated on its motives in bringing suit, the invasive, sweeping manner in which it was brought indicates that it hopes to leverage the risk of public embarrassment to convince Defendants, particularly Movant, to quickly capitulate, whether or not they did anything wrong. Plaintiff's quest for Identifying Information in this case, therefore, appears to be nothing more than an effort to use the judicial process to extract settlements on a mass scale, before the flaws in its case can be exposed. See, e.g. Ingenuity 13 v. Doe, No. 2:12-cv-8333-ODW(JCX), U.S. Dist. LEXIS 64564, at *11-14 (C.D. Cal. May 6, 2013); Voltage Pictures, LLC v. Does 1-31, No. CV413-037, 2013 U.S. Dist. LEXIS 47520, at *10 (S.D. Ga. April 1, 2013) ("[T]he latest BitTorrent cases have shined additional light on the potential for 'shake-down' abuse of innocent 'John Does'[.]); Patrick Collins, Inc. v. Does 1-38, No. 12-cv-10756-NMG, 2013 U.S. Dist. LEXIS 37856, at *7-8 (D. Mass. Feb. 19, 2013) ("[T]he fact that four settlements have occurred before any of the defendants have been identified in the public record illustrates how these types of cases create a strong tool for leveraging early settlements. Accordingly, this Court remains mindful of the potential that these cases have for abuse[.]"). Again, as noted earlier, the Plaintiff has failed to serve or name any of the Doe Defendants in any of its mass "infringement" cases. Dkt. Report, Purzel Video GmbH v. Does 1-108, No. 1:13-cv-00792 (N.D. Ill. 2013); Dkt. Report, Purzel Video GmbH v. Does 1-91, No. 4:12-cv-02292 (E.D. Mo. 2012); Dkt. Report, Purzel Video GmbH v. Does 1-44, No. 4:12-cv-02217 (E.D. Mo. 2012); Purzel Video GmbH v. Does 1-36, No. 4:12-cv-02215 (E.D. Mo. 2012). Given the forgoing, the meritorious nature of the lawsuit remains absent. At a minimum, it does not rise above the very real and pronounced interest of the Movant. Indeed, the balancing of interests here weighs against disclosure. Thus, the Movant's Motion should be granted.

## **CONCLUSION**

For the foregoing reasons, Defendant John Doe 48 respectfully requests that the Court

sever him from this action or, in the alternative, quash the Subpoena.

Dated: Chicago, Illinois                    PLAINTIFF,
      June 27, 2013                         JOHN DOE 48


_____
By: One of His Attorneys
Charles Lee Mudd Jr.
Mudd Law Offices
3114 West Irving Park Road
Suite 1W
Chicago, Illinois 60618
773.588.5410 Telephone
773.588.5440 Facsimile
Illinois ARDC: 6257957
clm@muddlaw.com